IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

———————————————

APPEAL NO. 25-14084

———————————————

UNITED STATES OF AMERICA

Plaintiff-Appellee,

v.

DAVID OGDEN

Defendant-Appellant.

———————————————

APPEAL FROM THE UNITED STATES DISTRICT
COURT FOR THE MIDDLE DISTRICT OF FLORIDA

———————————————

REDACTED INITIAL BRIEF OF APPELLANT

———————————————

CHARLES L. PRITCHARD, JR.
Federal Public Defender
Middle District of Florida

KATHERINE HOWARD
Assistant Federal Public Defender
Appellate Division
NY Atty Reg. 5624275
201 S. Orange Avenue, Suite 300
Orlando, FL 32801
Telephone: 407-648-6338
Email: Katherine_Howard@fd.org
Counsel for David Ogden

**STATEMENT REGARDING ORAL ARGUMENT**

This appeal raises important issues regarding Appellant David Ogden's 170-year sentence for production of child pornography and possession of child pornography:

(1) Did the district court plainly err in applying a five-level enhancement under U.S.S.G. § 4B1.5(b) based on a determination that production of child pornography is a "covered sex crime"?

(2) Is a 170-year sentence substantively unreasonable and greater than necessary to comply with the factors and purposes set forth in 18 U.S.C. § 3553(a)(2)?

Mr. Ogden respectfully suggests that argument by counsel familiar with the law and facts will aid the Court in a just resolution of his appeal.

i

TABLE OF CONTENTS

Statement Regarding Oral Argument .........................................................i

Table of Contents................................................................................ii

Table of Authorities.............................................................................v

Statement of Subject-Matter and Appellate Jurisdiction ........................x

Statement of the Issues.........................................................................1

Statement of the Case ..........................................................................1

    I.       Course of Proceedings ...............................................................1

    II.     Statement of Facts ....................................................................1

          A.    Mr. Ogden's childhood is ▮▮▮▮▮ and lonely. ..................1

          B.    Mr. Ogden works hard to succeed as an adult while he struggles with physical and mental health issues. .........3

          C.    Mr. Ogden accepts responsibility and pleads guilty after committing serious offenses....................................4

          D.    Due to a five-level enhancement under U.S.S.G. § 4B1.5(b)(1), Mr. Ogden's guideline range was calculated as 2,040 months................................................5

          E.    Mr. Ogden submits a neuropsychological evaluation, as well as a sentencing memorandum with additional mitigation, and requests a 30 year sentence. ..................6

          F.    The district court sentences Mr. Ogden to 170 years in prison—the statutory maximum for each count, run consecutively................................................................8

III.     Standard of Review ...............................................................12

Summary of the Argument ....................................................................13

Argument and Citations of Authority ...................................................16

I.     The district court plainly erred in applying the pattern
       enhancement  under U.S.S.G. § 4B1.5(b).............................16

    A.  A brief history of the pattern enhancement. .................16

    B.  The district court erred in applying the pattern
        enhancement based on Mr. Ogden's production of child
        pornography convictions. ..............................................20

        1.  Including production of child pornography as a
            "covered sex crime" exceeds the Commission's
            authority under the Act.............................................20

        2.  Considering the commentary is inappropriate under
            *Dupree*. ......................................................................25

            a.  The guideline is unambiguous. ...........................26

            b.  The commentary isn't a reasonable interpretation
                of the guideline. .................................................27

    C.  Reversal is warranted even though Mr. Ogden raises
        this issue for the first time on appeal. .........................32

        1.  Mr. Ogden can satisfy plain-error review.................32

            a.  Prongs one and two..............................................33

            b.  Prongs three and four..........................................35

        2.  The scope of § 4B1.5 is a significant question of
            general impact. .......................................................36

iii

II.    The 170-year, statutory maximum sentence is substantively unreasonable.............................................................................38

    A.    The  district court failed to meaningfully consider important factors and weighed the factors unreasonably. ...............................................................40

    B.    The 170-year advisory guideline range, which is also the statutory maximum, is greater than necessary and does not adequately account for Mr. Ogden's history and characteristics. .......................................................46

Conclusion...............................................................................................49

Certificate of Compliance with Type-Volume Limit ..............................51

Certificate of Service ...........................................................................51

iv

## TABLE OF AUTHORITIES

**Cases**

*Auer v. Robbins,*
519 U.S. 452 (1997) ................................................................. 25

*City of Arlington v. FCC,*
569 U.S. 290 (2013) ................................................................. 27

\* *Esteras v. United States,*
606 U.S. 185 (2025) ................................................................. 20

*Gall v. United States,*
552 U.S. 38 (2007) ................................................................... 33

\* *Hoctor v. U.S. Dep't of Agric.,*
82 F.3d 165 (7th Cir. 1996) ......................................... 27, 28, 29, 31, 32

*Kimbrough v. United States,*
552 U.S. 85 (2007) ................................................................... 17

*Kisor v. Wilkie,*
588 U.S. 558 (2019) ......................................... 25, 26, 27, 30, 31

*Pennsylvania ex rel. Sullivan v. Ashe,*
302 U.S. 51 (1937) ................................................................... 40

\* *Pepper v. United States,*
562 U.S. 476 (2011) ............................................................ 40, 45, 49

*Rita v. United States,*
551 U.S. 338 (2007) ............................................................ 48, 49

*Rosales-Mireles v. United States,*
585 U.S. 129 (2018) ............................................................ 33, 35, 36

*Santobello v. New York,*
404 U.S. 257 (1971) ................................................................. 43

**Cases**

*Stinson v. United States*,
  508 U.S. 36 (1993) ........................................................................23, 24

*United States v. Bahena Martinez*,
  815 F. App'x 385 (11th Cir. 2020) ......................................................45

*United States v. Bankston*,
  945 F.3d 1316 (11th Cir. 2019) ..................................................... 12, 33

*United States v. Boone*,
  97 F.4th 1331 (11th Cir. 2024)............................................................37

\* *United States v. Butler*,
  207 F.3d 839 (6th Cir. 2000) .........................................................23, 24

*United States v. Crisp*,
  454 F.3d 1285 (11th Cir. 2006) ...........................................................45

*United States v. Dougherty*,
  754 F.3d 1353 (11th Cir. 2014) ...........................................................47

\* *United States v. Dupree*,
  57 F.4th 1269 (11th Cir. 2023)...............................................25, 30, 34

*United States v. Foster*,
  878 F.3d 1297 (11th Cir. 2018) ...........................................................48

*United States v. Fox*,
  926 F.3d 1275 (11th Cir. 2019) ...........................................................37

*United States v. Gatlin*,
  90 F.4th 1050 (11th Cir. 2024)............................................................37

*United States v. Gonzalez*,
  550 F.3d 1319 (11th Cir. 2008) ...........................................................12

*United States v. Hamilton*,
  66 F.4th 1267 (11th Cir. 2023)............................................................37

**Cases**

*United States v. Havis,*
  927 F.3d 382 (6th Cir. 2019) ...............................................27

*United States v. Horn,*
  129 F.4th 1275 (11th Cir. 2025).................................................. 12, 37

*United States v. Irey,*
  612 F.3d 1160 (11th Cir. 2010) .......................................... 12, 39, 44, 45

*United States v. Isaac,*
  987 F.3d 980 (11th Cir. 2021) ...........................................37

*United States v. Kirby,*
  938 F.3d 1254 (11th Cir. 2019) ...........................................46

* *United States v. LaBonte,*
  520 U.S. 751 (1997) ...................................... 16, 21, 22, 23, 24

*United States v. Lusk,*
  119 F.4th 815 (11th Cir. 2024)...........................................12

*United States v. Newman,*
  614 F.3d 1232 (11th Cir. 2010) ...........................................43

*United States v. Ochoa-Molina,*
  664 F. App'x 898 (11th Cir. 2016) ......................................48

*United States v. Pennington,*
  667 F.3d 953 (7th Cir. 2012) ...............................................47

*United States v. Plate,*
  839 F.3d 950 (11th Cir. 2016) ...........................................38

*United States v. Pridgeon,*
  853 F.3d 1192 (11th Cir. 2017) ..........................................34

* *United States v. Riccardi,*
  989 F.3d 476 (6th Cir. 2021) ........................................27, 29, 30, 31, 32

\* *United States v. Rodriguez,*
  64 F.3d 638 (11th Cir. 1995) .......................................................... 43, 44

*United States v. Rogers,*
  989 F.3d 1255 (11th Cir. 2021) ........................................................... 37

*United States v. Rosales-Bruno,*
  789 F.3d 1249 (11th Cir. 2015) ...................................................... 48, 49

*United States v. Thomas,*
  446 F.3d 1348 (11th Cir. 2006) ........................................................... 47

*United States v. Vaquerano,*
  81 F.4th 86 (1st Cir. 2023) .................................................................. 24

*United States v. Weir,*
  51 F.3d 1031 (11th Cir. 1995) ............................................................. 34

*Williams v. New York,*
  337 U.S. 241 (1949) ............................................................................. 45

**Statutes**

18 U.S.C. § 3553(a) .......................................................................... 38, 46

28 U.S.C. § 991(a)–(b) ............................................................................ 17

\* Protection of Children from Sexual Predators Act of 1998,
  Pub. L. No. 105-314, § 505, 112 Stat. 2974 .............................. 18, 20, 21

Pub. L. No. 103–322, §  140008, 108 Stat. 2033 (1994) .......................... 23

**Sentencing Guidelines**

U.S.S.G. § 2B1.1, cmt. n.3(E)(i) (2025) .................................................. 30

U.S.S.G. § 2B1.1, cmt. n.3(F)(i) .............................................................. 30

U.S.S.G. § 2B1.1, cmt. n.3(E)(i) (2025) .................................................. 30

## Sentencing Guidelines

U.S.S.G. § 3E1.1(b) ................................................................ 43

U.S.S.G. § 4B1.5(a) ................................................................ 37

\* U.S.S.G. § 4B1.5(b) .......................................................... 16, 18, 37

U.S.S.G. § 4B1.5, cmt. n.2 ...................................................... 19

\* U.S.S.G. App. C (Vol. II), amend. 615 ................................... 18, 19

U.S.S.G. App. C, amend. 506 (1994) .......................................... 21

U.S.S.G. Ch. 5, Pt. A ............................................................ 6, 49

## Rules and Regulations

9 C.F.R. § 3.125(a) ................................................................ 28

## Other Authorities

*Cover*, The Oxford Pocket Dictionary of Current English ..................... 26

## STATEMENT OF SUBJECT-MATTER AND APPELLATE JURISDICTION

This is a direct appeal from the final judgment in a criminal case of the United States District Court for the Middle District of Florida, Orlando Division, entered on November 18, 2025. Doc. 51.[1] The district court had original jurisdiction pursuant to 18 U.S.C. § 3231. Appellant/Defendant David Ogden timely filed a notice of appeal on November 18, 2025. Doc. 53. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1291, 1294 and 18 U.S.C. § 3742.

---

[1] The district court later entered an amended judgment, Doc. 72, after the parties entered into a stipulation regarding restitution, Doc. 70.

x

## STATEMENT OF THE ISSUES

1.      Did the district court plainly err in applying the pattern enhancement under U.S.S.G. § 4B1.5(b)?

2.      Did the district court abuse its discretion and impose a substantively unreasonable sentence when it sentenced Mr. Ogden to a statutory maximum sentence of 170 years' imprisonment?

## STATEMENT OF THE CASE

### I.     Course of Proceedings

A grand jury returned an indictment charging Mr. Ogden with five counts of production of child pornography and one count of possession of child pornography. Doc. 1. Mr. Ogden pleaded guilty as charged. Doc. 64. The district court convicted him and sentenced him to 170 years' imprisonment—the statutory maximum for each count, to run consecutively. Doc. 51. Mr. Ogden timely appealed. Doc. 53. He is incarcerated, serving the 170-year sentence.

### II.    Statement of Facts

#### A.     Mr. Ogden's childhood is ████ and lonely.

When Mr. Ogden was a young child, his parents divorced. Final Presentence Report (PSR) ¶ 81. His dad remarried, ████████

1



His mother remarried multiple times, and

Although Mr. Ogden participated in school and extracurriculars, he felt lonely and out of place. *Id.* ¶ 88. He longed for closer relationships with friends and family. *Id.*

After graduating high school, Mr. Ogden continued his education and obtained technical certificates. *Id.* ¶ 108. But his struggles continued. At the age of 19, he turned to drugs and alcohol and

He was involuntarily committed under Florida's Baker Act. *Id.* ¶ 98; Doc. 44-1 at 10.

**B.    Mr. Ogden works hard to succeed as an adult while he struggles with physical and mental health issues.**

Despite his difficult start, Mr. Ogden did his best to be a productive adult. He enlisted in the Navy in 2010. *Id.* ¶ 90. The next year, while attending a Navy SEAL training, he began experiencing strokes. *Id.* ¶ 93; Doc. 44-1 at 6.



He was medically discharged in 2013. *Id.* ¶ 90; Doc. 44-1 at 6.

Pushing past these setbacks, Mr. Ogden worked to better himself and help others. He became a personal trainer. *Id.* ¶ 114. Even while he dealt with panic attacks ▮▮▮▮▮▮▮▮, *id.* ¶ 100; Doc. 44-1 at 10, he went to college, obtaining an associate degree from Valencia College and a bachelor's degree from the University of Central Florida in health sciences, PSR ¶ 108. He got married; he and his wife had two children. *Id.* ¶ 89. He continued his personal training, expanding to own and operate a lifestyle coach business. *Id.* ¶ 112.

3

### C.    Mr. Ogden accepts responsibility and pleads guilty after committing serious offenses.

By the time he reached his late thirties, Mr. Ogden had no criminal history save for a DUI when he was 22. *Id.* ¶ 76.[2] But that changed in 2024. Mr. Ogden snuck into his neighbor's home in the middle of the night, approached a bed where two children were sleeping, touched them, and used his phone to record their buttocks area and genitals. *Id.* ¶¶ 11, 13. He also pulled down the children's underwear while he exposed and touched himself. *Id.* ¶ 14. When police went to Mr. Ogden's home to arrest him, they found multiple videos of the two neighbor children, as well as additional child sexual abuse material of other children, who turned out to be Mr. Ogden's nieces. *Id.* ¶¶ 15–17; Doc. 66 at 10–11. They also found many artificial intelligence generated images and videos of child sexual abuse material. PSR ¶ 18.

Mr. Ogden accepted responsibility and pleaded guilty to all six counts of the indictment (five counts of production of child pornography

---

[2] A second DUI arrest, also when Mr. Ogden was in his twenties, did not result in any charges. *Id.* ¶ 80.

and one count of possession of child pornography) without a plea agreement. Doc. 64.

### D. Due to a five-level enhancement under U.S.S.G. § 4B1.5(b)(1), Mr. Ogden's guideline range was calculated as 2,040 months.

Before sentencing, the United States Probation Office prepared a presentence investigation report (PSR). After applying specific offense characteristics and the multiple count adjustment, Mr. Ogden's adjusted offense level was 44. PSR ¶ 68. Probation then applied a five-level enhancement under U.S.S.G. § 4B1.5 because, it stated, the offense of conviction was a "covered sex crime" and Mr. Ogden had "engaged in a pattern of activity involving prohibited sexual conduct." *Id.* ¶ 69. That increased his offense level to 49. *Id.* Once the three-level acceptance of responsibility reduction applied, *id.* ¶¶ 71–72, his total offense level was 46, which reduced to 43 because that is the highest offense level, *id.* ¶ 73.

Mr. Ogden had a criminal history score of zero, which corresponded to a criminal history category of I. *Id.* ¶ 77. With a total offense level of 43 and a criminal history category of I, Mr. Ogden's guideline range was life. PSR ¶ 118. But because the statutorily authorized sentences were

less than life, the guideline range became 2,040 months—the statutory maximum for each count, to run consecutively. *Id.*

Without the § 4B1.5 enhancement, Mr. Ogden's total offense level would have been 41 after the three-level acceptance of responsibility reduction. That would have corresponded to a guideline range of 324 to 405 months. U.S.S.G. Ch. 5, Pt. A.

**E.    Mr. Ogden submits a neuropsychological evaluation, as well as a sentencing memorandum with additional mitigation, and requests a 30-year sentence.**

Before sentencing, Mr. Ogden submitted a neuropsychological evaluation. PSR at p. 38. At the conclusion of the evaluation, the doctor identified multiple mitigating factors for the court to consider, including:

▮ ██████████████████████████
▮ ████████████████████
▮ ████████████████████████████
▮ ███████████████████████
▮ █████████████████
▮ █████████████████████████████████
██████████████

6



PSR at pp. 45–46. The Probation Office also identified Mr. Ogden's history and characteristics as a factor for the court to consider in determining whether a below-guideline sentence was warranted. *Id.* ¶ 138.[3]

Mr. Ogden also submitted a sentencing memorandum, in which he requested a sentence of 30 years' imprisonment, followed by a 15-year term of supervised release. Doc. 44. Among other things, he explained

---

[3] Probation identified the nature and circumstances of the offense and the need to protect the public as factors for the court to consider in determining whether to impose an above-guideline sentencing. *Id.* But the guideline range was the statutory maximum, *see supra* at 5–6, so the court couldn't go above it.

that he had been making efforts towards rehabilitation. *Id.* at 3. He admitted his conduct and felt such shame that he experienced suicidal ideation. *Id.* Yet he focused on trying to improve himself and others, including by leading bible study at the jail and helping others improve their health through exercise and diet. *Id.* at 4. A 30-year sentence, he explained, would put him in his late 60's when he was released. *Id.* Anything longer would be functionally a death sentence. *Id.*

Along with his sentencing memorandum, Mr. Ogden submitted his own letter; letters from his mother, stepfather, counselor, and friend; and educational certificates, including recent programs at the county jail for "MRT – Thinking for Good" and "Moral Reconation Therapy Coping with Anger." *Id.* at 8–25.

**F.     The district court sentences Mr. Ogden to 170 years in prison—the statutory maximum for each count, run consecutively.**

At sentencing, the district court adopted the PSR, calculated the guideline range of 2,040 months' imprisonment, and noted that it had reviewed the matters submitted on the electronic record. Doc. 66 at 5. It then invited Mr. Ogden to present additional mitigation. *Id.*

Mr. Ogden allocuted. Doc. 66 at 6. He took full responsibility and recognized that he had damaged and broken the trust of his family, his neighbor, and his neighbor's children. *Id.* He apologized to his family, including his sister (the mother of his nieces), his wife, and his children. *Id.* at 7. After Mr. Ogden finished, his mother gave a statement, expressing her deep disappointment over Mr. Ogden's actions but noting his growth and self-reflection over the past year. *Id.* at 8–9.

For its part, the government first called Mr. Ogden's sister, who spoke and shared the impact his actions had had on their lives. *Id.* at 10–15. She also read letters that her daughters had written. *Id.* at 15–17. Next, the government called Mr. Ogden's wife, who also spoke about the impact Mr. Ogden's actions had had on her children and her ability to provide for them. *Id.* at 17–24. She also revealed that he had been abusive during their marriage. *Id.* at 21–23.

Mr. Ogden's counsel recognized that the statements were heartbreaking, but she asked the court to take into account that Mr. Ogden had pleaded guilty, saving the victims from testifying. *Id.* at 24. She also noted that he had not distributed the images and that he was trying to make amends from jail by being a spiritual leader for other men.

9

*Id.* at 24–25. Largely to account for his acceptance of responsibility, she reiterated the request for a 30-year sentence. *Id.* at 25.

The prosecutor spoke next. She described the seriousness of Mr. Ogden's conduct, which had spanned several years and homes and had taken advantage of his position of trust. *Id.* at 26–28. The prosecutor acknowledged Mr. Ogden's "mental health and physical health issues" and his attempts to "do right and to do good" but argued that the seriousness and dangerousness of the offenses outweighed it. *Id.* at 28–29.

The court took a brief recess and returned to pronounce sentence. *Id.* at 29. The court began by acknowledging that Mr. Ogden had accepted responsibility and that "with very limited exceptions . . . if someone accepts responsibility for what they did, that should weigh heavily on the Court, and there should be some sort of manifestation of leniency based on that." *Id.* at 30. The court rejected, however, that the children would have needed to testify for the government to have secured a conviction

had Mr. Ogden gone to trial. *Id.* at 30–31.[4] The court opined that the children were "all going to be sentenced, emotionally, to life sentences" based on what Mr. Ogden had done and that he was a "predator and a monster." *Id.* at 31. The "only way that other people's kids can be safe," the court continued, was for Mr. Ogden "never to have access to those kids ever again." *Id.*

Thus, although the court stated that it appreciated that Mr. Ogden had accepted responsibility and took into consideration his "statements today," it believed it could not create a situation where he could have access to children. *Id.* at 32. The court then sentenced Mr. Ogden to 2,040 months' imprisonment—the maximum term for each count, to run consecutively, followed by a lifetime term of supervised release. *Id.* at 33. The court stated that after considering the sentencing guidelines and the sentencing factors listed in 18 U.S.C. § 3553(a)(1)–(7), the sentence was "sufficient but not greater than necessary to comply with the statutory purposes of sentencing." *Id.* at 38. This appeal follows.

---

[4] The court also disagreed with defense counsel that the facts of a case presented in Mr. Ogden's sentencing memorandum were "similar," describing Mr. Ogden's offenses as "much worse." *Id.* at 31.

11

## III.    Standard of Review

Issue I: This Court reviews the district court's interpretation and application of the guidelines de novo. *United States v. Lusk*, 119 F.4th 815, 825 (11th Cir. 2024). As a general matter, the Court reverses only for plain error when an issue is raised for the first time on appeal. *United States v. Bankston*, 945 F.3d 1316, 1318 (11th Cir. 2019). But this Court has discretion to review an unpreserved issue that "is a significant question having a general impact," like the "proper reading" of a guideline term that "potentially affects the sentences of numerous defendants." *United States v. Horn*, 129 F.4th 1275, 1298 (11th Cir. 2025).

Issue II: This Court reviews the substantive reasonableness of a sentence for an abuse of discretion. *United States v. Irey*, 612 F.3d 1160, 1188–89 (11th Cir. 2010) (en banc). The review "involves examining the totality of the circumstances, including an inquiry into whether the statutory factors in § 3553(a) support the sentence in question." *United States v. Gonzalez*, 550 F.3d 1319, 1324 (11th Cir. 2008).

## SUMMARY OF THE ARGUMENT

I.     For the pattern enhancement under U.S.S.G. § 4B1.5(b) enhancement to apply, Mr. Ogden's offense of conviction must be a "covered sex crime." The district court applied the enhancement based on the "covered sex crime" definition in the guideline's commentary, which includes production of child pornography. That was wrong for at least two independent reasons.

First, the Sentencing Commission exceeded Congress's specific directive, which the Commission lacks the authority to do, when it included production of child pornography in the "covered sex crime" definition. Congress directed the Commission to create the pattern enhancement, and in doing so listed the specific offenses to which the enhancement should apply—none of which is production of child pornography. Because Congress excluded production of child pornography as a qualifying offense for the enhancement, the guideline commentary must give way to that specific statutory directive.

Second, courts may defer to the guideline commentary only if, among other things, the text of the guideline is genuinely ambiguous after exhausting all traditional tools of construction. Here, the term

13

"covered sex crime" in the guideline's text is not genuinely ambiguous—it means a sex-related offense to which particular rules or laws apply. The text doesn't identify which rule or law makes a crime "covered," so none are covered. Even if the term were ambiguous, the commentary's definition, with its specific list of statutes, is not a reasonable interpretation of the guideline. Instead, it is a substantive policy choice, which belongs in the text, not the commentary. Deference to the commentary was therefore inappropriate.

Mr. Ogden did not raise this issue below, but reversal is warranted under plain-error review. Relying on the commentary's definition was clear error under the plain language of Congress's directive and the guideline, as well as under Supreme Court and this Court's precedent. And the error affected his substantial rights and seriously affected the fairness, integrity, and public reputation of the proceedings: without the enhancement, Mr. Ogden's guideline range would have been 324–405 months, rather than 2,040 months. Moreover, the proper scope of "covered sex crime" is an important issue of law, affecting not only Mr. Ogden but scores of criminal defendants. This Court should vacate Mr. Ogden's sentence and remand for resentencing.

14

II.    The district court imposed a substantively unreasonable sentence because it failed to reasonably weigh the 18 U.S.C. § 3553(a) factors or sufficiently consider factors due significant weight. The court's single-minded focus on Mr. Ogden's offense (and the corresponding concern that he posed a danger to children) was unreasonable. The court failed to give any weight to Mr. Ogden's mitigation, including his physical and mental health issues and efforts at rehabilitation. And although the court considered Mr. Ogden's acceptance of responsibility, it weighed his acceptance unreasonably by speculating about how the government would have proved its case at trial and ignoring the societal benefits of guilty pleas that the guidelines aim to promote.

To be clear, Mr. Ogden's offense was extremely serious, and the district court properly considered the severity of his conduct and its impact on his victims. But the court had to balance all the factors reasonably. It failed to do so here. The resulting 170-year, statutory maximum sentence, although within the advisory guidelines, *but see supra* at 13–14, is greater than necessary to satisfy the statutory sentencing purposes. The Court should vacate his sentence and remand for resentencing.

ARGUMENT AND CITATIONS OF AUTHORITY

## I. The district court plainly erred in applying the pattern enhancement under U.S.S.G. § 4B1.5(b).

The district court wrongly enhanced Mr. Ogden's sentence under U.S.S.G. § 4B1.5(b). The enhancement applies when the "instant offense of conviction is a covered sex crime . . . and the defendant engaged in a pattern of activity involving prohibited sexual conduct." U.S.S.G. § 4B1.5(b). The district court applied the enhancement based on a belief that production of child pornography is a "covered sex crime."[5] As explained below, that was wrong, and plainly so. Without the enhancement, Mr. Ogden's guideline range would have dropped significantly. Reversal is warranted, even under plain-error review.

### A. A brief history of the pattern enhancement.

Created in response to the Sentencing Reform Act of 1984, the Sentencing Commission is an administrative creature of Congress, allowed to exercise only the power constitutionally delegated to it. *See United States v. LaBonte*, 520 U.S. 751, 753 (1997). Its overarching "characteristic institutional role," established by Congress's general

---

[5] This appeal does not concern the "pattern of activity involving prohibited sexual conduct" component.

16

directives in 28 U.S.C. § 991, is to develop sentencing guidelines for use by judges at sentencing that are based on empirical evidence and national experience, reflect advances in human knowledge about criminal justice, and are no greater than necessary to serve sentencing purposes. *Kimbrough v. United States*, 552 U.S. 85, 108–09 (2007); 28 U.S.C. § 991(a)–(b).

But not all guidelines are derived from that process; some are derived from a specific directive from Congress. One directive is found in Section 505 of the Protection of Children from Sexual Predators Act of 1998 (the Act):

> Pursuant to its authority under section 994(p) of title 28, United States Code, the United States Sentencing Commission shall—
> (1)　review the Federal Sentencing Guidelines on **aggravated sexual abuse** under section 2241 of title 18, United States Code, **sexual abuse** under section 2242 of title 18, United States Code, **sexual abuse of a minor or ward** under section 2243 of title 18, United States Code, **coercion and enticement of a minor** under section 2422(b) of title 18, United States Code, **contacting a minor** under section 2422(c) of title 18, United States Code, and **transportation of minors and travel** under section 2423 of title 18, United States Code; and
> (2)　upon completion of the review under paragraph (1), promulgate amendments to the Federal Sentencing Guidelines to **increase penalties applicable to the offenses referred to in paragraph (1)** in any case in

17

> which the defendant engaged in a pattern of activity involving the sexual abuse or exploitation of a minor.

Protection of Children from Sexual Predators Act of 1998, Pub. L. No. 105-314, § 505, 112 Stat. 2974 (emphasis added). Thus, Section 505 of the Act directed the Commission to create an enhancement for defendants who were convicted of specified offenses and who engaged in a pattern of sexual abuse or exploitation.

In 2001, the Commission enacted § 4B1.5 through Amendment 615. U.S.S.G. App. C (Vol. II), amend. 615. Subsection (b), the relevant subsection here, provides for the pattern enhancement:

> In any case in which the defendant's instant offense of conviction is a **covered sex crime**, neither § 4B1.1 nor subsection (a) of this guideline applies, and the defendant engaged in a pattern of activity involving prohibited sexual conduct:
>
> (1)    The offense level shall be **5** plus the offense level determined under Chapters Two and Three . . . .

U.S.S.G. § 4B1.5(b) (first emphasis added). The guideline's text does not define "covered sex crime," but Application Note 2 purports to define it:

> **Covered Sex Crime as Instant Offense of Conviction.—** For purposes of this guideline, the instant offense of conviction must be a covered sex crime, i.e.: (A) an offense, perpetrated against a minor, under (i) chapter 109A of title 18, United States Code; (ii) **chapter 110 of such title, not including trafficking in, receipt of, or possession of, child pornography, or a recordkeeping offense**; (iii)

18

chapter 117 of such title, not including transmitting information about a minor or filing a factual statement about an alien individual; or (iv) 18 U.S.C. § 1591; or (B) an attempt or a conspiracy to commit any offense described in subdivisions (A)(i) through (iv) of this note.

U.S.S.G. § 4B1.5, cmt. n.2 (emphasis added). The definition includes certain offenses under Chapter 110, like production of child pornography, that Congress did not include in Section 505 of the Act.

In "Reason for Amendment," the Commission explicitly states that the Amendment 615 was "promulgated primarily[6] in response to [the Act], Pub. L. 105-314, which contains several directives to the Commission." U.S.S.G. App. C (Vol. II), amend. 615. The first part of the Amendment, which created § 4B1.5, "addresses [the Act's] directive to increase penalties in any case in which the defendant engaged in a pattern of activity of sexual abuse or sexual exploitation of a minor." *Id.* So at the time of the promulgation of § 4B1.5, the Commission recognized its authority to promulgate § 4B1.5 as stemming from the directive in Section 505 of the Act.

---

[6] The parts of Amendment 615 that weren't promulgated in response to the Act aren't relevant to this appeal, such as resolving a circuit conflict regarding grouping.

19

**B.**　**The district court erred in applying the pattern enhancement based on Mr. Ogden's production of child pornography convictions.**

**1.**　**Including production of child pornography as a "covered sex crime" exceeds the Commission's authority under the Act.**

The Sentencing Commission lacked the authority to include child pornography offenses, including production of child pornography because doing so conflicted with Congress's specific directive.

Congress gave the Commission a specific directive: create an enhancement for individuals convicted of specific listed offenses who had also engaged in a pattern of pattern of sexual abuse or exploitation of a minor. *See supra* at 16–19. That directive was plain. The enhancement applies only for the listed offenses; the "natural implication is that Congress did not intend" for the enhancement to apply to other offenses. *Esteras v. United States*, 606 U.S. 185, 195 (2025) (discussing 18 U.S.C. § 3583(e) and *expressio unius est exclusio alterius* canon). The structure of the Act confirms the negative implication. Elsewhere in the Act, Congress specifically addressed production of child pornography. *See, e.g.*, Protection of Children from Sexual Predators Act of 1998, Pub. L. No. 105-314, §§ 201–202, 112 Stat. 2974. And in the section of the Act

20

immediately following the directive (§ 505), Congress referenced chapter 110. *Id.* § 506. Accordingly, Congress's exclusion of chapter 110 offenses, including production of child pornography, from its directive to create the pattern enhancement was purposeful.

Yet when the Commission attempted to fulfill Congress's directive, it included production of child pornography. The inclusion of child pornography thus conflicted with Congress's directive. Under *LaBonte*, the Sentencing Commission must "bow to" the plain terms of the statute. 520 U.S. at 757. As a result, the Commission's inclusion of the production of child pornography as a qualifying offense is invalid.

*LaBonte* concerned an amendment to the career offender guideline that redefined its term "offense statutory maximum" to mean the unenhanced statutory maximum in every case (whether or not the enhanced maximum actually applied in a given case), which represented one of the few efforts to ameliorate the harsh effect of the career offender guideline. U.S.S.G. App. C, amend. 506 (1994). The Commission said that it made the change to avoid unwarranted double counting and unwarranted disparity. *Id.* (Reason for Amendment).

The Supreme Court held that the Commission had exceeded its authority in purporting to define "maximum term authorized" to mean something different from what Congress meant in its specific directive in § 994(h), with the Court, not the Commission, deciding what Congress meant in the directive. *See LaBonte*, 520 U.S. at 753–54. The Court rejected the notion that the Commission could disregard a specific congressional directive by relying on its general guideline amendment authority. *Id.* at 753.

First, the Court "assume[d] that in drafting this legislation, Congress said what it meant." *Id.* at 757. Second, "[g]iving the words used their ordinary meaning," the Court held that the word "maximum" means the maximum "attainable in a given case." *Id.* at 757–58. Third, finding the language of the directive plain and unambiguous, the Court held that the Commission could not deviate from that plain meaning by coining the guideline term "offense statutory maximum" and construing that term to mean the unenhanced maximum in all cases. The Commission instead "must bow to the specific directives of Congress." *Id.* at 757. Because the Commission's interpretation of the directive was "at odds with § 994(h)'s

22

plain language, it must give way." *Id.* (citing *Stinson v. United States*, 508 U.S. 36, 38 (1993)).

The Sixth Circuit properly applied *LaBonte* in *United States v. Butler*, 207 F.3d 839 (6th Cir. 2000). In *Butler*, the court held that a guideline enhancement for using or attempting to use a minor in the offense was invalid because it was broader than Congress's specific directive. 207 F.3d at 849–52. Congress, through the Violent Crime Control and Law Enforcement Act of 1994, had directed the Commission to "'promulgate guidelines . . . to provide that a *defendant 21 years of age or older* who has been convicted of an offense shall receive an appropriate sentence enhancement if the defendant involved a minor in the commission of the offense." *Id.* at 850 (quoting Pub. L. No. 103–322, § 140008, 108 Stat. 2033 (1994)) (emphasis added by *Butler* court). But when implementing the directive by issuing U.S.S.G. § 3B1.4, "the Commission simply removed the age restriction." *Id.* The Sixth Circuit

23

held that doing so "was a direct overruling of an explicit Congressional declaration." *Id*.[7]

The same result follows here. As in *LaBonte* and *Butler*, the Commission exceeded its authority. Congress issued a specific directive regarding the pattern enhancement. And it listed specific offenses that would be subject to the enhancement. Child pornography offenses, including production, were not included. That omission was a purposeful exclusion. *See supra* at 20–21. The Comision's inclusion of child pornography production is thus "at odds with" Congress's directive, sweeping in offenses that Congress excluded. Because the inclusion of child pornography production cannot be squared with Congress's plain language, this Court may not apply the enhancement to Mr. Ogden. *LaBonte*, 520 U.S. at 751; *Stinson*, 508 U.S. at 38.

---

[7] Other circuits disagree. *See United States v. Vaquerano*, 81 F.4th 86, 93 (1st Cir. 2023) (joining circuits holding that, contrary to *Butler*, minor-use enhancement is valid).

24

## 2.    Considering the commentary is inappropriate under *Dupree*.[8]

Applying the enhancement was wrong for another reason. The district court relied exclusively on the commentary to apply the pattern enhancement, but that reliance was inappropriate. This Court applies *Kisor*'s gloss on *Auer* deference to the guidelines and its interpretative commentary. *United States v. Dupree*, 57 F.4th 1269, 1273–77 (11th Cir. 2023) (en banc) (citing *Kisor v. Wilkie*, 588 U.S. 558 (2019); *Auer v. Robbins*, 519 U.S. 452 (1997)).[9] A court cannot defer to a commentary provision unless the text of a guideline is genuinely ambiguous after using all the traditional tools of statutory construction. *Dupree*, 57 F.4th at 1273–77. Even then, the commentary must be "reasonable"—that is, "it must come within the zone of ambiguity the court has identified after employing all its interpretive tools." *Kisor*, 588 U.S. at 576. And finally,

---

[8] This issue is pending in another appeal before the Court, No. 25-14174, *United States v. Czech*.

[9] On April 20, 2026, the Supreme Court granted certiorari to consider this question: "Whether *Stinson v. United States*, 508 U. S. 36 (1993), still correctly states the rule for the deference that courts must give the commentary to the Sentencing Guidelines." *Beard v. United States* (25-5343).

before deferring to the commentary, courts must independently inquire into the character and context of the commentary to determine whether it is entitled to controlling weight. *Id.* Applying these steps, the "covered sex crime" definition in the commentary is owed no deference.

### a. The guideline is unambiguous.

There is no genuine ambiguity in the term "covered sex crime" that would allow use of the commentary. Under the plain meaning of "covered sex crime," the instant offense must, of course, be a crime relating to sex. So far, so good. But what about "covered"? "Cover," in this context, means "(of a rule or law) apply to (a person or situation)." *Cover*, The Oxford Pocket Dictionary of Current English, *available at* https://perma.cc/QAS6-F48E. Under § 4B1.5(b)'s plain meaning, then, a "covered sex crime" is a crime relating to sex to which a particular rule or law applies. There is no genuine ambiguity that would permit deferring to the commentary.

The government may retort that the guideline text doesn't specify the rule or law that must apply to the sex crime to make it "covered." The omission doesn't make the guideline ambiguous, however. The Commission didn't provide the rule or law that would make the sex crime

26

covered, so none are covered. Because "covered sex crime" isn't ambiguous, the analysis ends there.

### b. The commentary isn't a reasonable interpretation of the guideline.

Even if this Court disagrees and concludes that "covered sex crime" is ambiguous, Mr. Ogden prevails at *Kisor* step two. That's because the commentary's list of statutes is not an interpretation of the guideline, so it does not "fall 'within the bounds of reasonable interpretation.'" *Kisor*, 588 U.S. at 575 (quoting *City of Arlington v. FCC*, 569 U.S. 290, 296 (2013)). Instead, it is a "substantive legislative rule that belongs in the guideline itself to have force." *United States v. Riccardi*, 989 F.3d 476, 483 (6th Cir. 2021). A "substantive policy choice" is not an interpretation. *Id.* at 487. It is an attempt at rulemaking outside the requirements of congressional review and notice-and-comment. *See United States v. Havis*, 927 F.3d 382, 386 (6th Cir. 2019) (en banc). The Commission's bare list of chapters and statutes in the commentary is not "derived from" the guideline's text "by a process reasonably described as interpretation." *See Hoctor v. U.S. Dep't of Agric.*, 82 F.3d 165, 170 (7th Cir. 1996). The Commission's attempt to decide which "sex crimes" should be "covered" in the commentary is thus ineffective and due no deference.

27

The Seventh Circuit's opinion in *Hoctor*, while not a Sentencing Guidelines case, is instructive. There, the Department of Agriculture issued a regulation that required animal dealers to house the animals in "structurally sound" facilities that can "contain the animals."[10] *Hoctor*, 82 F.3d at 167–68 (quoting 9 C.F.R. § 3.125(a)). The petitioner, Patrick Hoctor, began dealing in exotic animals, including big cats, from his farm. *Id.* at 168. The animals were contained within primary enclosures, which were surrounded by a containment fence. *Id.* And, at the suggestion of a Department of Agriculture veterinarian who inspected the facility when he started his business, he erected a six-foot-high perimeter fence around the entire compound. *Id.*

The next year, the Department of Agriculture issued an internal memorandum addressed to its inspectors in which it said that all

---

[10] The regulation provides, in full, as follows:

Structural strength. The facility must be constructed of such material and of such strength as appropriate for the animals involved. The indoor and outdoor housing facilities shall be structurally sound and shall be maintained in good repair to protect the animals from injury and to contain the animals.

9 C.F.R. § 3.125(a).

dangerous animals, including big cats, had to be within an eight-foot-high perimeter fence. *Id.* After being cited several times for his too-short fence, Mr. Hoctor sought judicial review of the eight-foot rule. *Id.*

Ultimately, the Seventh Circuit vacated the order under review because the eight-foot rule was invalid for not being issued under the notice and comment procedure. *Id.* at 172. "A rule that turns on a number," the Seventh Circuit explained, "is likely to be arbitrary" because "[t]here is no way to reason to an eight-foot perimeter-fence rule as opposed to a seven-and-a-half foot fence or a nine-foot fence or a ten-foot fence." *Id.* at 170. The Seventh Circuit held that "[w]hen agencies base rules on arbitrary choices they are legislating, and so these rules are legislative or substantive and require notice and comment rulemaking." *Id.* at 170–71. Because the Department of Agriculture's arbitrary eight-foot rule "[couldn't] be derived by interpretation," it had to go through notice and comment rulemaking, and because it had not done so, it was invalid. *See id.* at 172.

The Sixth Circuit's opinion in *Riccardi*, which relied on *Hoctor*, is also instructive. There, a postal employee stole from the mail many gift cards that had an average value of about $35 each. *Riccardi*, 989 F.3d at

480. Despite knowing the average value of the cards, the PSR calculated the loss amount using § 2B1.1's commentary, which states that the loss "shall be not less than $500" for each "unauthorized access device." *Id.* (citing U.S.S.G. § 2B1.1, cmt. n.3(F)(i)).[11] The district court overruled the defendant's objection to this calculation. *Id.*

On appeal, the Sixth Circuit first recognized, as did this Court, *see Dupree*, 57 F.4th at 1275, that *Kisor* "applies just as much to *Stinson* (and the Commission's guidelines) as it does to *Auer* (and an agency's regulations)," *Riccardi*, 989 F.3d at 485.

The Sixth Circuit then applied *Kisor* step one to determine "whether § 2B1.1 is 'genuinely ambiguous.'" *Riccardi*, 989 F.3d at 486 (quoting *Kisor*, 588 U.S. at 574). Ultimately, the Sixth Circuit determined that it "need not decide whether one clear meaning of the word 'loss' emerges from the potential options after applying 'the traditional tools of construction' to § 2B1.1." *Id.* at 486 (quoting *Kisor*, 588 U.S. at 575). That was because, applying *Kisor* step two, "[n]o matter the word's meaning, the commentary's $500 minimum loss amount for gift cards does not fall

---

[11] This $500 rule has since been moved to Application Note E(i). U.S.S.G. § 2B1.1, cmt. n.3(E)(i) (2025).

'within the zone of [any] ambiguity' in this guideline." *Id.* (quoting *Kisor*, 588 U.S. at 576). As the Sixth Circuit explained, "[n]o reasonable person would define the 'loss' from a stolen gift card as an automatic $500," rather than "such fact-dependent things as the value of the gift card or the costs of replacing it." *Id.* (citations omitted). The Sixth Circuit "distinguish[ed] 'legislative rules' (which must proceed through notice-and-comment rulemaking) from 'interpretive rules' (which need not proceed through that rulemaking) under the Administrative Procedure Act." *Id.* at 487. The Sixth Circuit concluded that the $500 rule "cannot 'be derived from [§ 2B1.1] by a process reasonably described as interpretation,'" and "was instead a substantive policy choice" by the Commission. *Id.* (quoting *Hoctor*, 82 F.3d at 170). Thus, because the $500 rule "does not 'fall within the bounds of reasonable interpretation' of § 2B1.1's text," the district court erred in using it. *Id.* at 489 (quoting *Kisor*, 588 U.S. at 576).

Too here, the decision about which offenses to include in the list of "covered sex crime[s]" was a "substantive policy choice" that belongs in the text of the guideline, not the commentary. *Id.* at 487. Like the eight-foot-fence rule in *Hoctor*, including only certain offenses in, and excluding

31

others from, the definition of "covered sex crime" is not something that "[can] be derived by interpretation." *Hoctor*, 82 F.3d at 172. Just like "[t]here [was] no process of cloistered, appellate-court type reasoning by which the Department of Agriculture could have excogitated the eight-foot rule from the structural-strength regulation," no amount of legal reasoning would tell a person that "covered sex crime" means production of child pornography, but not trafficking in child pornography. *Id.* at 171. Instead, the decision to include one and not the other was simply a policy choice. And policy choices belong in the text, not the commentary. *See Riccardi*, 989 F.3d at 487. This is especially true here, where the policy choice the Commission made conflicts with Congress's. *See supra* at Part I.B.1. Because the arbitrary list of offenses that are "covered sex crime[s]" was in the commentary, rather than the text, it is invalid. Thus, the district court erred in applying the pattern enhancement.

### C. Reversal is warranted even though Mr. Ogden raises this issue for the first time on appeal.

#### 1. Mr. Ogden can satisfy plain-error review.

Although Mr. Ogden did not raise this issue in the district court, reversal is warranted under plain-error review. To meet the plain-error standard, Mr. Ogden must show (1) an error, (2) that was obvious,

32

(3) that affected his substantial rights, and (4) that seriously affects the fairness, integrity, or public reputation of the judicial proceedings. *Bankston*, 945 F.3d at 1318. Once those conditions are met, the Court "should exercise its discretion to correct the forfeited error." *Id.* (quoting *Rosales-Mireles v. United States*, 585 U.S. 129, 135 (2018)).

### a. Prongs one and two

As explained above, the district court's application of the five-level pattern enhancement under U.S.S.G. § 4B1.5 was erroneous. The erroneous enhancement led to an incorrect guideline calculation, *see supra* at 5–6, which amounts to significant procedural error, *Gall v. United States*, 552 U.S. 38, 51 (2007).

The error was plain. "An error is obvious when it flies in the face of either binding precedent or the explicit language of a statute or rule." *Bankston*, 945 F.3d at 1318. Here, construing "covered sex crime" to include production of child pornography was obviously wrong under both of Mr. Ogden's arguments explained above.

First, applying the pattern enhancement for a production offense "flies in the face of" Congress's specific directive to the Commission regarding the creation of the pattern enhancement and *LaBonte* and

33

*Stinson*, which compel the Court to apply the statute, not the guideline. *See supra* at Part I.B.1.

Mr. Ogden recognizes that, in the career offender context, this Court rejected an argument that the Commission lacked authority to identify drug offenses not included in Congress's express directive, holding that "§ 994(a) of the enabling statute vests the Commission with broad authority to promulgate guidelines and policy statements and 'provides independent grounds for the career offender provision.'" *United States v. Pridgeon*, 853 F.3d 1192, 1199 (11th Cir. 2017) (quoting *United States v. Weir*, 51 F.3d 1031, 1032 (11th Cir. 1995), *overruled on other grounds by Dupree*, 57 F.4th at 1279 n.9). *Pridgeon* doesn't control here, however. The listed offenses in § 505 are exclusive, as confirmed by the surrounding context. *See supra* at 20–21. Mr. Ogden also respectfully submits that *Pridgeon* is incompatible with *LaBonte* (and did not consider the *LaBonte*'s impact when it applied pre-*LaBonte* precedent like *Weir*). This Court should not extend *Pridgeon* to bless the Commission's adoption of § 4B1.5, which exceeds Congress's specific directive that the pattern enhancement apply only for specified

34

offenses.[12]

Second, applying the commentary's definition of "covered sex crime" (to include production of child pornography) also "flies in the face of" the text of the guideline and *Kisor* and *Dupree*, which explain when a court may defer to the commentary. *See supra* at Part I.B.2. Additionally, a pending appeal before this Court, *United States v. Czech*, raises this same issue. *See supra* at n.8. So if the Court has a question about whether the guideline's text and binding precedent like *Dupree* make the error plain, a decision in *Czech* could conclusively establish the error here.

### b.    Prongs three and four

The third and fourth prongs of plain-error review are satisfied by the district court's miscalculation of the guideline range. *See Rosales-Mireles*, 585 U.S. at 139–42, 145. As the Supreme Court has explained, guideline miscalculations "ultimately result from judicial error" and when an error, as here, results in a "higher range than the [g]uidelines provide," that generally establishes that the error affected the

---

[12] Should this Court believe that *Pridgeon* and the cases it relies on are controlling here, Mr. Ogden respectfully preserves the issue for purposes of further review.

defendant's substantial rights and seriously undermined the fairness, integrity, or public reputation of the judicial proceedings. *Id.*

This is especially true for someone like Mr. Ogden, where the district court sentenced him within the applicable guideline range. With a correctly calculated guideline range, Mr. Ogden would have faced a guideline range of 324–405 months—a significant difference from the 2,040 month guideline range the district court erroneously calculated (and imposed). *See supra* at 5–6, 11. And "what reasonable citizen wouldn't bear a rightly diminished view of the judicial process and its integrity if courts refused to correct obvious errors of their own devise that threaten to require individuals to linger longer in federal prison than the law demands?" *Rosales-Mireles*, 585 U.S. at 141 (internal quotation marks omitted). Accordingly, the Court should exercise its discretion to correct the error.

### 2. The scope of § 4B1.5 is a significant question of general impact.

Regardless of the standard of review, the Court should exercise its discretion to consider the proper meaning of the term "covered sex crime." Only those individuals whose instant offense is a "covered sex crime" qualify for an enhancement under § 4B1.5. The consequence of the

36

enhancement is serious: it can raise a defendant's offense level (and thus the guideline range) significantly. *See* U.S.S.G. § 4B1.5(a) (providing offense level table unless offense level under Chapters Two and Three is greater); *id.* § 4B1.5(b) (increasing offense level by 5 (and no less than 22)). Mr. Ogden is a prime example: without the enhancement, he faced a guideline range of 324 to 405 months—in line with the 30 year sentence he requested. *Supra* at 5–6; Doc. 44. But the § 4B1.5(a) enhancement drastically increased his guideline range to 2,040 months.

And the enhancement is unfortunately common; many defendants before this Court have been held subject to the enhancement—including in multiple published decisions over the past several years. *See, e.g.*, *United States v. Boone*, 97 F.4th 1331 (11th Cir. 2024); *United States v. Gatlin*, 90 F.4th 1050 (11th Cir. 2024); *United States v. Hamilton*, 66 F.4th 1267 (11th Cir. 2023); *United States v. Isaac*, 987 F.3d 980 (11th Cir. 2021); *United States v. Rogers*, 989 F.3d 1255 (11th Cir. 2021); *United States v. Fox*, 926 F.3d 1275 (11th Cir. 2019). Thus, regardless of Mr. Ogden's lack of preservation in the district court, this Court should exercise its discretion to resolve this "significant question having a general impact." *Horn*, 129 F.4th at 1298; *see supra* at 12.

37

## II.    The 170-year, statutory maximum sentence is substantively unreasonable.

District courts must impose sentences that are sufficient—but not greater than necessary—to comply with the factors and purposes set forth in 18 U.S.C. § 3553(a)(2), which include the need to reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, deter criminal conduct, protect the public, and provide the defendant with needed educational, medical, and other correctional treatments. *See United States v. Plate*, 839 F.3d 950, 957 (11th Cir. 2016). District courts must also consider the nature and circumstances of the offense, the history and characteristics of the defendant, the kinds of sentences available, the applicable guideline range, the pertinent policy statements of the Sentencing Commission, the need to avoid unwarranted sentencing disparities, and the need to provide restitution. *See id.*; 18 U.S.C. § 3553(a).

Although district courts have considerable discretion in applying these factors and imposing a sentence, a district court abuses that discretion when it: (1) fails to consider relevant factors that were due significant weight; (2) gives significant weight to an improper or irrelevant factor; or (3) commits a clear error of judgment in considering

38

the proper factors. *Irey*, 612 F.3d at 1189. "As for the third way that discretion can be abused, a district court commits a clear error of judgment when it considers the proper factors but balances them unreasonably . . . ., arriving at a sentence that does not achieve the purposes of sentencing as stated in § 3553(a)." *Id.* (internal quotation marks omitted).

In reviewing a sentence's reasonableness, this Court "can and should consider additional salient facts that were elicited, and uncontroverted." *Id.* at 1190 (internal quotation marks omitted). "A district court cannot write out of the record undisputed facts by simply ignoring them. *Id.* "[T]he importance of facts in light of the § 3553(a) factors is not itself a question of fact but instead is an issue of law." *Id.*

"[S]ubstantive review exists, in substantial part, to correct sentences that are based on unreasonable weighing decisions." *Id.* at 1194. This Court will vacate a district court's sentence if it is left with a definite and firm conviction that the district court committed a clear error of judgment in weighing the factors. *Id.* at 1190. As explained below, this is a case where a clear error of judgment and unreasonable weighing decisions infected the sentence; the Court's correction is needed.

**A.    The district court failed to meaningfully consider important factors and weighed the factors unreasonably.**

The district court abused its discretion by failing to meaningfully consider Mr. Ogden's important mitigating characteristics and by weighing the sentencing factors unreasonably. As the Supreme Court has explained, "justice generally requires consideration of more than the particular acts by which the crime was committed and that there be taken into account the circumstances of the offense together with the character and propensities of the offender." *Pepper v. United States*, 562 U.S. 476, 488 (2011) (quoting *Pennsylvania ex rel. Sullivan v. Ashe*, 302 U.S. 51, 55 (1937)). Indeed, "highly relevant—if not essential—to the selection of an appropriate sentence is the possession of the fullest information possible concerning the defendant's life and characteristics." *Id.* (cleaned up).

Mr. Ogden presented uncontroverted evidence of his "life and characteristics." He had serious physical and mental health issues, including a stroke ████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

40

██████████████████████████████████████████

████████ And, while his crimes were undeniably serious, he had virtually no criminal history and was working hard to rehabilitate himself by leading bible studies in jail and taking classes to help him better cope with his issues. *See supra* at 1–8 (citing PSR, Neuropsychological Report, and Sentencing Memorandum). Finally, he had accepted responsibility and pleaded to all six counts without a plea agreement.

The district court never mentioned the majority of this mitigation,[13] including Mr. Ogden's background and the detailed neuropsychological evaluation identifying multiple serious physical and mental health issues. Although the court made a brief comment at the beginning of the hearing that it had reviewed electronic submissions and later stated that it had considered the § 3553(a) factors, Doc. 66 at 5, 38, those generic comments cannot assure this Court that the district court reasonably factored Mr. Ogden's specific mitigation into its decision to impose a

---

[13] The only thing the district court discussed was Mr. Ogden's acceptance of responsibility. But as explained *infra*, it weighed his acceptance unreasonably.

41

statutory-maximum, 170-year sentence.[14] Even assuming the court had considered Mr. Ogden's mitigation, it gave the mitigation so little weight as to be meaningless. Especially considering the result was the statutory maximum sentence of 170 years, the court's dismissive treatment of Mr. Ogden's mitigation, which had been presented in writing for its consideration, was unreasonable.

Compounding that problem, the district court also weighed Mr. Ogden's acceptance of responsibility unreasonably. As an initial matter, the court recognized Mr. Ogden had accepted responsibility. Doc. 66 at 30. Indeed, it granted a three-level reduction for acceptance under the guidelines. *Id.* at 5; PSR ¶¶ 71–72. That reduction was ineffectual, however, because Mr. Ogden's guideline range stayed at the statutory maximum. PSR ¶¶ 73, 119. Although the court acknowledged that as a general matter individuals who plead guilty should "have some manifestation of leniency," it discounted Mr. Ogden's acceptance by

---

[14] His mitigating characteristics were not only recognized by defense counsel, they were also recognized by the doctor who examined Mr. Ogden, the government, and the Probation Office. PSR at pp. 45–46 (doctor); PSR ¶ 138 (Probation); Doc. 66 at 28 (prosecutor). Only the district court failed to mention them.

noting that the government would not have needed to put the victims on the stand to testify in order to secure the convictions. Doc. 66 at 30–31. That was unreasonable for at least two reasons.

First, it was speculation about how the government would prove its case, and courts must not speculate as to facts that permit a more severe sentence. *See United States v. Newman*, 614 F.3d 1232, 1238–39 (11th Cir. 2010) (discussing findings to apply sentencing enhancement).

Second, the value of accepting responsibility is not limited to when a victim is saved from testifying. Society has a broader interest in guilty pleas. *See United States v. Rodriguez*, 64 F.3d 638, 643 (11th Cir. 1995) (citing, *inter alia*, *Santobello v. New York*, 404 U.S. 257, 260 (1971)). Among other things, guilty pleas prevent the "justice system from becoming overburdened with full-scale trials," *id.*, and when done in a timely fashion, "permit[ ] the government to avoid preparing for trial and permit[ ] the government and the court to allocute their resources efficiently," U.S.S.G. § 3E1.1(b).

The guidelines recognize these interests and "contemplate that a defendant's acceptance of responsibility will be recognized at sentencing." *Rodriguez*, 64 F.3d at 643. These same considerations remain important

43

when, by operation of the guidelines and the statutory maximum, a defendant receives no benefit in terms of a lower guideline range when he pleads guilty. *Id.* When a defendant knows that "he will receive the same sentence regardless of whether he accepts responsibility, he will be more likely to shun plea bargaining and go to trial." *Id.* Thus, although the court is not required to vary downward from the guideline range in a situation like this, doing so "serves society's legitimate interest in guilty pleas." *Id.*

The district court failed to account for this important interest. Instead, it imposed a statutory maximum, consecutive sentence of 2,070 months—a sentence that also did not account for his mitigation—based on the seriousness of the offense and the corresponding need to protect the public. But the district court cannot write out of the record Mr. Ogden's mitigating history and characteristics, and this Court must consider that mitigation's significance. *See Irey*, 612 F.3d at 1190.

To be clear, the district court properly considered the seriousness of Mr. Ogden's offense, including the impact of his conduct on the young victims. But the court's emphasis on this factor (and its corresponding concern of the need to protect the public) wholly eclipsed its consideration

44

of other significant sentencing factors, including Mr. Ogden's mitigating history and characteristics. Doc. 60 at 30–33. Those factors were due significant weight, and the court gave them no weight at all. That was unreasonable. *See United States v. Bahena Martinez*, 815 F. App'x 385, 387 (11th Cir. 2020) (explaining that court's "'single-minded' focus on one factor to the detriment of other relevant sentencing factors," such as defendant's history and characteristics, "'is a symptom of an unreasonable sentence'" (quoting *United States v. Crisp*, 454 F.3d 1285, 1292 (11th Cir. 2006) (alterations adopted)).

The court's failure to reasonably weigh the significant, relevant factors was a clear error of judgment. *See Irey*, 612 F.3d at 1189. As a result, the court fashioned a sentence that fails to reflect Mr. Ogden's unique and mitigating circumstances, violating "the principle that 'the punishment should fit the offender and not merely the crime.'" *Pepper*, 562 U.S. at 487–88 (quoting *Williams v. New York*, 337 U.S. 241, 247 (1949)). "[S]ubstantive review exists, in substantial part, to correct sentences that are based on unreasonable weighing decisions." *Irey*, 612 F.3d at 1194. This is one of those cases.

45

**B.    The 170-year advisory guideline range, which is also the statutory maximum, is greater than necessary and does not adequately account for Mr. Ogden's history and characteristics.**

The district court's focus on the nature of the offense—to the detriment of other important sentencing factors—led the court to impose a 170-year sentence, which is greater than necessary to satisfy the statutory purposes of sentencing.

Mr. Ogden recognizes this Court has held that, as a legal fiction, any sentence of "years" is considered less than the indefinite incarceration of a life sentence. *See United States v. Kirby*, 938 F.3d 1254, 1257–58 (11th Cir. 2019). But as a practical matter, a sentence of fewer than 170 years unquestionably would exceed Mr. Ogden's life expectancy, equally serving the goals of protecting the public, deterrence, and the other relevant sentencing factors. If a sentence of 60, 90, or 120 years would exceed Mr. Ogden's natural life expectancy, those sentences too are sufficient to satisfy the statutory purposes of sentencing under the district court's reasoning.

It follows that 170 years violates the Congress's directive that a sentence be sufficient, but not greater than necessary, to satisfy the statutory sentencing goals. 18 U.S.C. § 3553(a); *accord United States v.*

46

*Pennington*, 667 F.3d 953, 957 (7th Cir. 2012) (explaining that where sentencing judge viewed difference between 64 months and 68 months as "de minimis," it "implicitly accepted that 64 months was sufficient to serve the purposes of sentences" and so the "parsimony principle"— shorthand for § 3553(a)'s directive that a sentence be sufficient but not greater than necessary—would "ordinarily require the more lenient sentence").

Indeed, 170 years is the statutory-maximum sentence, another signal that the sentence is unreasonable. This Court has repeatedly upheld sentences as reasonable because they are below the statutory maximum. *See, e.g.*, *United States v. Dougherty*, 754 F.3d 1353, 1362 (11th Cir. 2014) ("A sentence imposed well below the statutory maximum penalty is an indicator of a reasonable sentence."); *United States v. Thomas*, 446 F.3d 1348, 1357 (11th Cir. 2006) (citing cases). A statutory maximum sentence, by contrast, is reasonable only for the most culpable of offenders—not those, like Mr. Ogden, who accepted responsibility and have significant mitigating history and characteristics.

To be fair, 170 years' imprisonment was also Mr. Ogden's advisory guideline range. *But see* Part I, *supra.* But a district court may not

presume that a guidelines sentence is reasonable. *See Rita v. United States*, 551 U.S. 338, 350 (2007). And although this Court "'ordinarily . . . expects'" a within-guidelines sentence to be reasonable, it does not "automatically presume that a sentence within the guidelines range is reasonable.'" *United States v. Foster*, 878 F.3d 1297, 1309 (11th Cir. 2018) (quoting *United States v. Hunt*, 526 F.3d 739, 746 (11th Cir. 2008)) (cleaned up). Sentences within the guideline range thus do not escape substantive reasonableness review. *See, e.g.*, *United States v. Ochoa-Molina*, 664 F. App'x 898, 899–901 (11th Cir. 2016) (vacating within guidelines sentence as substantively unreasonable).

Indeed, the guideline range is just one of many factors courts must consider when deciding on a sentence that is sufficient, but not greater than necessary, to serve the purposes of sentencing. *See United States v. Rosales-Bruno*, 789 F.3d 1249, 1259 (11th Cir. 2015). Thus, "[i]n assigning weight to the § 3553(a) factors as part of the weighing process, a court may (and should) consider individualized, particularized, specific facts and not merely the guidelines label that can be put on the facts." *Id.* at 1260. This individualized consideration is necessary because, as the

48

Supreme Court has recognized, sometimes a guidelines sentence "fails properly to reflect § 3553(a) considerations." *Rita*, 551 U.S. at 351.

The guideline sentence here is one that "fails properly to reflect the § 3553(a) considerations." *Id.* The guideline range reflects only the nature of the offense. At offense level 43, every individual—regardless of his criminal history category—has the same guideline range of life. U.S.S.G. Ch. 5, Pt. A. That range therefore does not account for Mr. Ogden's unique, mitigating history and circumstances. *See Pepper*, 562 U.S. at 488. Nor does it account for the benefit to society by pleading guilty. *See* Part II.A, *supra.* In light of these "individualized, particularized, specific facts," *Rosales Bruno*, 789 F.3d at 1260, the 170-year sentence is greater than necessary to achieve the purposes of sentencing.

## CONCLUSION

Mr. Ogden requests the Court vacate his sentence and remand for resentencing.

Respectfully submitted,

Charles L. Pritchard, Jr.
Federal Public Defender, MDFL

*/s/ Katherine Howard*
Katherine Howard
Assistant Federal Public Defender
NY Atty Reg. No. 5624275
201 South Orange Ave., Suite 300
Orlando, Florida 32801
Telephone: 407-648-6338
Email: Katherine_Howard@fd.org
Counsel for Mr. Ogden

50

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT

In accordance with Fed. R. App. P. 32(g)(1), I certify that this brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7) because it contains 9,594 words according to Microsoft Word's word count, excluding the parts exempted by Fed. R. App. P. 32(f).

*/s/Katherine Howard*
Katherine Howard
Counsel for Mr. Ogden

## CERTIFICATE OF SERVICE

I certify that on April 30, 2026, a true copy of the foregoing *Redacted Initial Brief of Appellant* was filed using the Court's Electronic Case Filing system, which will electronically notify Assistant United States Attorney Sean Siekkinen.

*/s/Katherine Howard*
Katherine Howard
Counsel for Mr. Ogden

51